[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10895
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 25, 2010
JOHN LEY
CLERK

D. C. Docket No. 2:08-CV-00606-PAM-SPC

VINCENT D. ANGIOLILLO,

Plaintiff-Appellant,

versus

COLLIER COUNTY,
KEVIN RAMBOSK, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 25, 2010)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Vincent D. Angiolillo filed this § 1983 and state law action against Collier

County, its Sheriff, and five employees of the Collier County Sheriff's Department

("Defendants"), alleging claims of false arrest, malicious prosecution, conspiracy, and state law malicious prosecution. The district court either dismissed or granted summary judgment to Defendants on all claims. Angiolillo now appeals, raising three issues for our review. First, Angiolillo argues that the district court abused its discretion in denying his motion to file a second amended complaint. Second, he argues that the court erred in granting summary judgment to Defendants Bates, Celiberti, and Hurley. And third he argues that the district court erred in awarding attorney's fees to Defendants. After thorough review of the parties' briefs and the record on appeal, we affirm on all grounds.

## I.      Denial of Motion to Amend

"[W]e will only reverse a district court's denial of a motion to amend in instances in which the district court has clearly abused its discretion." Smith v. Sch. Bd. of Orange County, 487 F.3d 1361, 1366 (11th Cir. 2007) (internal citation and quotation omitted). "Pursuant to Fed. R. Civ. P. 15(a), a party seeking to amend its complaint after it previously has amended the complaint, or after a responsive pleading has been filed, may amend the complaint 'only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'" Id. (citing Fed. R. Civ. P. 15(a)). "However, where a party's motion to amend is filed after the deadline for such motions, as delineated

2

in the court's scheduling order, the party must show good cause why leave to amend the complaint should be granted." Id. See also Sosa v. Airprint Sys., 133 F.3d 1417, 1418 n.2 (11th Cir. 1998) ("[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused."); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

The district court's deadline to amend pleadings expired on February 20, 2009, as delineated in its Case Management and Scheduling Order. Angiolillo filed his motion for leave to amend on June 11, 2009, nearly four months after the court's deadline. Therefore, Rule 16(b)'s good cause requirement governed the court's decision whether to grant Angiolillo's motion for leave to amend. We agree with the district court that Angiolillo failed to demonstrate good cause.

Angiolillo's motion for leave to file a Second Amended Complaint merely stated that "since the filing of his previous complaint, he ha[d] discovered information" that "warrant[ed] the reinstatement of Plaintiff's claims against Defendants Hunter, Rambosk and Spina." Angiolillo failed to give the court any idea, either general or particularized, as to what evidence was discovered and how such evidence might resurrect the claims against Defendants Hunter, Rambosk, and Spina that the district court had previously dismissed with prejudice. See

Smith, 487 F.3d at 1367 ("Careful review of Smith's motion to amend his complaint reveals that Smith did not indicate with any specificity the good cause he had for untimely moving to amend his complaint. Smith alleged that discovery had 'produced new violations of the [l]aw that must be addressed within the counts of the complaint,' but he failed to further indicate what those new violations were, what facts supported them, and why those facts previously were undiscoverable.") (alteration in original).

Moreover, Angiolillo erroneously cited in his motion that Rule 15, as opposed to 16(b), governed the court's decision whether to grant him leave to amend, and thus failed to even include any substantive memorandum on good cause in support of his motion. Finally, our own independent comparison of the content of Angiolillo's Amended Complaint and Second Amended Complaint reveals only minor revisions to Angiolillo's factual allegations, none of which appear to add any material evidence to his claims against Hunter, Rambosk, or Spina. Accordingly, we hold that the district court did not abuse its discretion in denying Angiolillo's motion for leave to amend.[1]

---

[1] Angiolillo attempts to make a good-cause argument before our Court on appeal, arguing that the district court erred in dismissing his claims against Hunter, Rambosk, and Spina with prejudice in response to a motion by Defendants not labeled as dispositive in violation of Local Rule 3.01(h)'s requirement that "[a]ll dispositive motions must be so designated in the caption of the motion." This is the same argument he raised before the district court in his motion to reconsider the district court's denial of his motion to amend. On appeal, Angiolillo

II.    Summary Judgment in Favor of Defendants Bates, Celiberti, Hurley

The district court granted summary judgment to Defendants Bates, Celiberti, and Hurley, concluding that Defendants were entitled to qualified immunity on Angiolillo's false arrest claim and that Angiolillo failed to raise a genuine issue of material fact on his § 1983 malicious prosecution claim. "We review the district court's grant of summary judgment de novo, viewing all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party." Rine v. Imagitas, Inc., 590 F.3d 1215, 1222 (11th Cir. 2009). Upon review, we affirm.

A.    False Arrest

---

faults the district court with "completely ignor[ing]" his Local Rule 3.01(h) argument and denying his motion for reconsideration on this ground.

"A district court has sound discretion whether to alter or amend a judgment pursuant to a motion for reconsideration, and its decision will only be reversed if it abused that discretion." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009). Where a party gives no reason for not previously raising an issue, denial of a motion for reconsideration is "especially soundly exercised." Id. (citing O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992)). In light of Angiolillo's failure to raise this argument, or any good-cause argument for that matter, in his initial untimely motion to amend—arguments that were readily available to him at the time—the district court did not abuse its discretion in denying his motion for reconsideration. See Wilchombe, 555 F.3d at 957 ("A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment[, which includes] new arguments that were previously available, but not pressed.") (internal citations and quotations omitted).

To the extent that Angiolillo seeks to raise his argument related to Local Rule 3.01(h) as a distinct legal issue on appeal, he has failed to do so. This argument only appears as a sub-issue under his primary argument that the district court abused its discretion in denying his motion to amend. We thus consider this argument only as a belated attempt to establish the good-cause showing that was lacking in his initial motion to amend.

"Law enforcement violates a person's Fourth Amendment rights when it arrests him or her without probable cause, and a claim arises under § 1983." Rushing v. Parker, 599 F.3d 1263, 1265 (11th Cir. 2010). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010). However, to receive qualified immunity from a false-arrest claim, an officer need not have actual probable cause but only "arguable" probable cause. Id. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Id. (internal quotation and citations omitted).

Angiolillo was arrested for violating the terms of a Temporary Injunction for Protection Against Dating Violence, which prohibited him from contacting a woman whose full legal name is "Crystal" either in person or by phone, from using another person to contact her, or from frequenting a bar called JD Jags. Angiolillo received a similar temporary injunction against Crystal. The evidence submitted to the State Attorney's office, which led to its issuance of the capias warrant for

6

Angiolollo's arrest, included the following items: (1) an investigative report stating that on May 12, 2007, Crystal (who is a realtor) received four phone calls from someone named "Lisa" purporting to express interest in a piece of real estate but that when Crystal returned the call she heard Angiolillo's voice stating, "GOT HER!," accompanied by cheering and laughing; (2) a recording of the May 12, 2007, phone call by Crystal, which captured the background noise on the open line and Angiolollo's voice stating "SHE'S FUCKED . . . SHE CAN' HEAR NOTHING . . . SHE'S LEAVING A MESSAGE . . ."; (3) an investigative report stating that Angiolillo had contacted the Sheriff's office to report that Crystal had violated the injunction order by calling his phone and leaving a message and a notation that no such message was recorded on Angiolillo's phone; (4) an investigative report stating that on May 27, 2007, Crystal reported that two of her friends, Judith Simon and Reuben Thompson, saw Angiolillo drive within 50-60 feet of the front door of JD Jags; and (5) statements by Simon and Thompson as to the same. Based on this evidence, the district court concluded that arguable probable cause existed to arrest Angiolillo, and thus Defendants Bates, Celiberti, and Hurley—the agents responsible for the investigation and providing the evidence to the State Attorney's Office—were entitled to qualified immunity from

liability for Angiolillo's alleged false arrest.[2]

Angiolillo does not make any specific legal arguments related to arguable probable cause in his briefs. In fact, it is difficult to discern whether he raises any arguments responding to the district court's grant of summary judgment on his false arrest claim. He merely states the following: that someone in the Sheriff's Department heard that Celiberti was told to "push the case through and get a warrant and arrest Mr. Angiolillo because he did not deserve to be sheriff"; that Bates failed to confirm Angiolillo's alleged alibi as to his whereabouts on the night he was sighted outside of JD Jags; that Celiberti failed to confirm the true identity of the owner of the phone number left by "Lisa," which was in actuality the number for the residence of Crystal's friends who provided statements about Angiolillo's presence at JD Jags; and that Bates misrepresented to the State Attorney that the statements provided by these friends, Simon and Thompson, were sworn, when in fact they were unsworn. None of these allegations vitiate the

---

[2]   In concluding that there was arguable probable cause for Angiolillo's arrest, the district court also relied on Angiolillo's and Crystal's cell phone records, which demonstrated that on May 12, 2007, Angiolillo received a phone call from Crystal but that at that same time Crystal had placed a phone call to the number left by "Lisa" in reference to her real estate inquiry. The purported explanation for this discrepancy is the purchase of a "Boost" phone, which can be used to transfer a phone call to another number without the caller's knowledge. This evidence, however, was not submitted to the State Attorney's office until after Angiolillo's arrest pursuant to the capias warrant on October 15, 2007. Therefore, we do not consider this evidence in our evaluation of whether there was arguable probable cause so as to insulate Defendants from liability under the doctrine of qualified immunity.

district court's finding of arguable probable cause.

Even accepting all of Angiolillo's statements as true, and disregarding the unsworn statements of Simon and Thompson that Angiolillo approached JD Jags in his car, the remaining undisputed evidence in the record is sufficient to establish arguable probable cause that Angiolillo used a third party, "Lisa," to contact Crystal—conduct that expressly violates the terms of the temporary injunction. First, Crystal's victim statement reported that when she returned "Lisa's" phone call, she heard Angiolillo's voice saying, "We got her!" Second, Defendants obtained from Crystal a recording of the open line, which captures Angiolillo's voice making statements suggesting he intended to capture a message from Crystal on the phone line via the use of a "Boost" phone, a fact which was eventually corroborated by examining Angiolillo's and Crystal's phone records. Finally, Angiolillo subsequently contacted the Sheriff's Office claiming that Crystal had violated her temporary injunction by calling his phone number and leaving a message but that no such message was found. In sum, we conclude that a reasonable officer in the same position of the Assistant State Attorney issuing the capias warrant for Angiolillo's arrest "could have believed that probable cause existed to arrest Plaintiff." Brown, 608 F.3d at 734. Accordingly, we affirm the district court's grant of summary judgment to Defendants Bates, Celiberti, and

Hurley on Angiolillo's false-arrest claim.

B.      Malicious Prosecution

"To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). "Under Florida law, a plaintiff must establish each of six elements to support a claim of malicious prosecution: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding." Id. Because we agree with the district court that there was probable cause for Angiolillo's arrest, he is unable to establish the fourth element of a common law claim for malicious prosecution under Florida law. Accordingly, Defendants were entitled to summary judgment on Angiolillo's § 1983 malicious prosecution claim.

III.    Attorney's Fees

A court may award attorney's fees under § 1988 to a prevailing defendant where the court finds that "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Hughes v. Rowe, 449 U.S. 5, 14, 101 S. Ct. 173, 178 (1980) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S. Ct. 694, 700 (1978)). Our circuit considers the following factors in determining whether a claim is frivolous: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." Sullivan v. Sch. Bd. of Pinellas County, 773 F.2d 1182, 1189 (11th Cir. 1985). We review an award of attorney's fees and costs for abuse of discretion. Gray ex rel. Alexander v. Bostic, 570 F.3d 1321, 1324 (11th Cir. 2009). Abuse-of-discretion review requires us to "affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).

The district court, adopting the Magistrate Judge's report and recommendation, made the ultimate determination that Angiolillo's lawsuit was frivolous and awarded Defendants' attorney's fees. The court specifically concluded that Angiolillo failed to establish a prima facie case; Defendants did not

11

offer to settle; and the district court dismissed the majority of Angiolillo's claims with prejudice early in the litigation upon the filing of various motions to dismiss and Angiolillo's few remaining claims with prejudice on summary judgment. Thus, the district court did not apply "the wrong legal standard." Id. On appeal, Angiolillo renews the same two objections to the Magistrate Judge's report as he raised before the district court. Neither of these objections persuade us that the district court "made a clear error of judgment." Id.

First, Angiolillo argues that the Magistrate Judge violated the "sanctity of the mediation process" by determining that Defendants did not offer to settle because local rules require that any information derived from a mediation may not be made known to the Court. See Rule M.D. Fla. L. R. 9.07(b). As the district court stated in its response to this argument below, the Magistrate Judge did not violate Rule 9.07(b) by determining that Defendants did not offer to settle. Rule 9.07(b) protects parties participating in mediation from the use of any statement made during mediation proceedings as an admission against their interest.[3] The

---

[3]    Rule 9.07(b) reads in full:
**Restrictions on the Use of Information Derived During the Mediation Conference:** All proceedings of the mediation conference, including statements made by any party, attorney, or other participant, are privileged in all respects. The proceedings may not be reported, recorded, placed into evidence, made known to the trial court or jury, or construed for any purpose as an admission against interest. A party is not bound by anything said or done at the conference, unless a settlement is reached.

12

Magistrate Judge did not use any statement made by Angiolillo during mediation as an admission against his interest in violation of Rule 9.07(b).

Second, Angiolillo disputes the Magistrate Judge's determination that he failed to establish a prima facie case by arguing that certain statements made by the Magistrate Judge are unsupported by the record. Angiolillo argues that if the Magistrate Judge had correctly stated the record, which allegedly demonstrates that he contested the allegation that he violated the temporary injunction by driving by JD Jags and that he amended his complaint only once, as opposed to twice, upon consent of the district court, Defendants would have failed to satisfy Sullivan's first prong. We agree with the district court; these discrete factual disputes do not undermine the district court's ultimate determination that Angiolillo failed to establish a prima facie case.

To the contrary, our independent review of the record demonstrates that the district court was completely warranted in concluding that "Angiolillo [did] not even attempt to shoulder his burden to establish that genuine issues of fact remain on his [malicious prosecution] claim." In his response to Defendants' Motion for Summary Judgment, Angiolillo recites the elements for a prima facie case of malicious prosecution and, in a conclusory fashion, contends that these elements have been satisfied. He engages in no discussion demonstrating how the evidence

13

supports his satisfaction of those elements. With respect to his false arrest claim, although he did put forth some argument in an attempt to undermine the conclusion that probable cause existed for his arrest, he did not provide any evidence to that effect. Angiolillo may have argued that Defendants' hypothesis that "Lisa's" phone was a "Boost" phone linked to Angiollio was "unsupported," but the record demonstrates the opposite. This hypothesis was derived directly from Crystal's victim statement, the audio recording of Angiolillo's voice, and Angiolillo's report that Crystal had violated the injunction by calling his cell phone. Furthermore, this "unsupported hypothesis" was ultimately confirmed after Angiolillo's arrest. We have sustained findings of frivolity where a motion for summary judgment has been granted in instances in which the plaintiff did not introduce any evidence in support of his claim. See Roper v. Edwards, 815 F.2d 1474, 1478 (11th Cir. 1987) ("With this total absence of credible evidence to support their claims, the Ropers' action was frivolous, and the court's award of fees to Cochran was clearly justified."). Rather than offering substantive evidence in support of his claims, Angiolillo's submissions to the district court are replete with exclamatory statements and hyperbolic accusations, in many cases wholly unsupported by substantive legal argument.

Moreover, this case stands in stark contrast to the narrow circumstances in

14

which we have reversed an award of attorney's fees to a prevailing defendant. See, e.g., Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1559 (11th Cir. 1995) (holding that "a plaintiff's claim should not be considered groundless or without foundation for the purpose of awarding fees to a prevailing defendant when the claims are meritorious enough to receive careful attention and review"). In Walker, the district court on two occasions denied the defendants' summary judgment motions and the case proceeded to trial. Here, almost all of Angiolillo's claims were dismissed early in this litigation on various motions to dismiss, and in its summary judgment order the district court concluded that Angiolillo's arguments were not only unpersuasive but almost nonexistent. Angiolillo's case did not present claims meritorious enough to receive the district court's "careful attention and review." Id.

In sum, we conclude that the district court did not clearly err in finding Angiolillo's claims "frivolous, unreasonable, or without foundation." Hughes, 449 U.S. at 14, 101 S. Ct. at 178 (quoting Christiansburg, 434 U.S. at 421, 98 S. Ct. at 700). Accordingly, we uphold the district court's award of attorney's fees to Defendants pursuant to § 1988.

AFFIRMED.[4]

---

[4] Appellant's request for oral argument is denied.